# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ANTONARI WILLIAM ALEXANDER, ) | |
|     Plaintiff, ) | Civil Action No. 7:19-cv-00784 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MRS. K. MOORE-CRAFT, *et al.*, ) | By: Norman K. Moon |
|     Defendants. ) | Senior United States District Judge |

Although this case was originally filed in September 2019, it has not yet been screened pursuant to 28 U.S.C. § 1915A(a).[1] The delays are primarily because of repeated motions for extensions of time sought and received by Alexander, as well as his filing of an amended complaint in March 2020. Also, he only recently satisfied the financial filing requirements in the case, on April 13, 2020.

Upon review of the complaint pursuant to 28 U.S.C. § 1915A(a), I conclude that some of Alexander's claims must be dismissed, either because they already have been asserted by him in another lawsuit and resolved against him, or because they fail to state a federal claim. Other claims will be permitted to go forward at this time, and the Clerk will be directed to notify defendants of this action.[2]

I also will deny without prejudice Alexander's first motion for preliminary injunctive and overrule and deny his "objections" to the denial of his motion for appointment of counsel. As to his second motion for a preliminary injunction, I will require defendants to respond to that motion within thirty days.

---

[1] I omit internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] The format of Alexander's complaint and the repetitive and rambling nature of his allegations makes it difficult to determine what claims he is bringing against whom. If Alexander believes this opinion fails to properly identify any of his claims or his allegations against any particular defendant, he may so advise the court in a motion to reconsider this opinion and order.

I. BACKGROUND

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2) (requiring court, in a case where plaintiff is proceeding *in forma pauperis*, to dismiss the case if it, for example, is frivolous or fails to state a claim on which relief may be granted). Pleadings of self-represented litigants are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Alexander's amended complaint names the following defendants: Mrs. K. Moore-Craft, L. Collins, Capt. Franklin, Lt. Messer, E. Shirks, Sgt. Taylor, Correctional Officer Taylor, Correctional Officer Mayes, Hearings Officer Mullins, Lt. Lyall (Officer in Charge), Counts, Nurse Craft, Harold Clarke (the Director of VDOC), and J. Kiser (the Warden of Red Onion.) His amended complaint consists of more than sixty hand-written pages and he lists fifty-two separate claims, includes a separate affidavit, and states that he has "65 other documents" he wants to include but has not yet sent to the court. However, many of his "claims" repeat—over and over—the same allegations about the same events.[3] In particular, most of his allegations arise from the following events, all of which occurred at Red Onion State Prison ("Red Onion"):

---

[3] Others of his claims are actually prayers for relief. For example, he asks for polygraph examinations of him and the people involved in the November 3, 2019 incident. (Am. Compl, Claims 16, 21, 31, 40.) He also wants certain unidentified people fired, the "bogus infractions" erased from his record, an apology, changes to VDOC procedures, money damages as well as costs, large quantities of specific medication to treat his memory loss, and an emergency transfer to another facility. (*Id.*, Claims 17, 25, 44, 48.) His complaint also includes a laundry list of items unrelated to his claims. (*Id.*, Claim 49 (asking for damages and certain food items, but also a 13-inch TV, a G-shock watch, CL-20 head phones, eye contacts, and Air Max sneakers).)

2

(1) a November 3, 2019 incident in which he alleges he was "slammed on his face" in his cell by Moore-Craft and Shirks and then later Correctional Officers Taylor and Mayes twisted his neck "like an owl," resulting in injuries and continuing pain; (2) his subsequent placement in ambulatory restraints ordered by Captain Franklin and his placement in a segregated housing unit ("SHU") cell (Cell C-301) that he contends was filthy and smelled;[4] (3) the denial of medical treatment for his injuries while he was in the SHU; (4) allegedly false disciplinary charges being brought against him arising from the events of November 3; and (5) a disciplinary hearing addressing those charges, in which he alleges that the hearing officer (Mullins) and appeals officer (Counts) were biased against him and that he was otherwise denied due process. (*See* Am. Compl., Claims 1–8, 11–15, 18–22, 30–37, 39–43, 47–48, 50–52, Dkt. No. 16.)

Alexander also refers to three other incidents in which he was slammed on his face while at Red Onion, but he provides few details for the other three, aside from listing their dates, and referencing the names of at least some of the alleged perpetrators. Specifically, he claims they occurred on April 15, 2017, July 12, 2018, and March 7, 2019. (*Id.*, Claims 9, 27, 48.)[5] Similarly, he references an incident in which his head was hit against a steel beam or pillar, but he does not identify when that occurred. (*Id.*, Claims 10, 44.)[6] Notably, though, none of the individuals involved are named as defendants. Rather, it seems that he is offering these

---

[4] He refers to the cell as a "torture chamber" and described it as having feces, urine, sperm, blood, and bugs that have been there a very long time. He alleges that the "smell alone makes you sick" and that he got a headache as a result of being in the cell for two days. (Am. Compl., Claim 42, Affidavit at 2.)

[5] According to Alexander, all of these incidents were "retaliation" for an earlier incident in which correctional officer Maloney says plaintiff assaulted him after Maloney spit in plaintiff's face. He says that all the people "slamming" him are Maloney's friends and associates. (Am. Compl., Claim 9.) Maloney was involved in the April 15, 2017 incident. In the other two face-slamming incidents, he names a Sgt. Mannon and a Lt. Boyd as the individuals who slammed him on his face. (*Id.*, Claim 37.)

[6] Alexander alleges that Sgt. Hall is the individual who hit Alexander's head against a beam, while Sgt. Artrip and Lt. Adams watched and failed to intervene. (Am. Compl., Claims 10, 44.)

3

allegations to support his supervisory liability claims against Unit Manager Collins, Warden Kiser, and Harold Clarke.

Alexander's complaint also seems to be making several Eighth Amendment living conditions claims. In addition to challenging as unconstitutional the conditions in Cell C-301, he also alleges that the food at Red Onion is "extremely poor" and it is "like eating shit or throw-up," although he does not allege that he has lost weight or otherwise been affected by the unappetizing food. He also states that he is being attacked and sexually assaulted, that he has been denied rec and showers, and that his cell is trashed and searched "all the time." (*Id.*, Claims 28–29.) None of these assertions are supported by specific facts or details.

Lastly, Alexander makes general claims of racial and religious discrimination, claims that staff at Red Onion are all related or friends and so they engage in a conspiracy to retaliate, and claims that his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") were violated. He provides few specifics for any of those allegations, either. (*See, e.g.*, Am. Compl., Claims 9–10 (stating he has been called a "Muslim Money" and racial slurs); Claim 46 (racial and religious discrimination); Claim 23 (saying he is protected by the ADA because of his mental health issues and referencing an incident (not identified by date) when he fell off the top bunk in his cell and "cracked open the skin on the top of his head"); Claims 24, 30, 38, 46, 52 (all alleging "conflicts of interest" or retaliation and mistreatment based on relationships between staff members).

Based on all of these allegations, Alexander asserts violations of his First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendment rights, ADA claims (both "federal and state"), and state-law claims, including assault and battery and other unidentified state-law claims. (*Id.*, Claims 25–27, 45.)

II. SCREENING OF COMPLAINT

As noted at the outset of this opinion, many of Alexander's claims—to the extent I have been been able to determine what those claims are—fail to state a claim for which relief can be granted.

**A. Claims arising from the April 15, 2017 incident, the other two incidents in which he was "slammed on his face," and the incident in which his head was banged into a steel beam or pillar**

Although Alexander includes allegations about an April 15, 2017 incident in which Maloney allegedly used excessive force against him, he has not named Maloney or others involved in that incident as defendants and he does not appear to be seeking relief for those claims. In any event, all claims related to the April 15, 2017 incident involving Maloney and the alleged denial of medical treatment afterward were asserted by Alexander in a prior case, *Alexander v. Parks* , No. 7:17-cv-524 (W.D. Va.), and so he is barred from asserting those claims here. *In re Varat Enters.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (explaining that where later litigation arises from the same cause of action as the first, the judgment in the prior action bars litigation of "every matter actually adjudicated in the earlier case" and "every claim that might have been presented") (citing *Nevada v. United States*, 463 U.S. 110, 129–30 (1983)). In that case, I granted summary judgment in some of the defendants' favor as to many of Alexander's claims. *Alexander v. Parks*, No. 7:17-cv-524, Dkt. Nos. 64–67 (W.D. Va. January 28, 2019). His remaining claims were tried to a jury, and the jury found in defendants' favor. *Id.*, Dkt. Nos. 145, 146 (W.D. Va. Feb. 25, 2020), *appeal docketed*, No. 20-6331 (4th Cir. Mar. 6, 2020). Because Alexander already has had a full opportunity to litigate claims arising from that incident, they cannot be asserted here. *See In re Varat Enters.*, 81 F.3d at 1315.

As noted, Alexander's amended complaint also refers to two other face-slamming

incidents—involving conduct by a Lt. Boyd and Sgt. Mannon—and an incident in which he alleges that Sgt. Hall used excessive force against him and two other VDOC employees watched and failed to protect him. (Am. Compl., Claims 10, 44.) As noted, though, he does not name any of these individuals as defendants. It thus appears that those facts are being offered only by way of background, or perhaps to support his supervisory liability claims. In any event, even if he had intended to assert those claims in this suit, they would be misjoined. *See* Fed R. Civ. P. 20 (explaining that defendants may be joined *only* if the claims arose out of the same transaction or occurrence, or series thereof, *and* contain a question of fact or law common to all the defendants).

## B. Living conditions claims

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But "the Constitution does not mandate comfortable prisons," and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347–49.

To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). To establish the second element of deliberate indifference, a plaintiff must show that the defendant was personally aware of facts indicating a substantial risk of serious harm, and that the defendant

must have actually recognized the existence of such a risk. *See, e.g., Farmer*, 511 U.S. at 838–840; *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994). The defendant then must have failed to take "reasonable measures" to alleviate the danger. *Farmer,* 511 U.S. at 832.

### 1. Placement in cell C-301 after November 3, 2019 incident

Alexander's first conditions claim is that that he was housed for two days after the November 3, 2019 incident in a so-called "torture" cell that had all sorts of bodily fluids on the floor or walls, *e.g.*, feces, urine, semen, and nasal discharge. According to Alexander, the cell smelled horrible and lacked running water, and it made him sick to his stomach and gave him a headache. I assume, for purposes of this opinion, that these conditions could satisfy the objective standard of a living conditions claim. *See Venable v. Mathena*, No. 7:14cv00295, 2016 WL 3675900, at *3 (W.D. Va. July 6, 2016) (denying summary judgment as to prisoner's claim that he was held in a cell for multiple days that was smeared with feces, urine, and blood without protective clothing, a mat, or shoes, and that he complained to several defendants about the conditions, but none of them did anything); *but see Jordon v. Brad*, No. 7:20-CV-00174, 2020 WL 3422197, at *3 (W.D. Va. June 22, 2020) (concluding that allegations that a prisoner was held in a cell with feces and water on the floor for approximately six hours did not satisfy the objective component); *Whitmore v. W. Reg'l Jail*, No. 3:18-CV-01483, 2019 WL 3756396, at *8 (S.D.W. Va. July 19, 2019) (collecting and discussing many cases where courts found that similar conditions did not create a deprivation that was "sufficiently serious" to meet the first prong of an Eighth Amendment claim).

But Alexander's claim nonetheless fails because he has not alleged that any particular defendant had knowledge about the condition of the cell and failed to take action to address it. As noted, to sufficiently plead the subjective element of his claim, Alexander must set forth facts

7

that plausibly allege that a defendant official was aware of facts from which he could draw the inference that a significant risk of harm existed; that he, in fact, drew such an inference; and that he disregarded such a risk by failing to take "reasonable measures" to alleviate the danger. *Farmer*, 511 U.S. at 832, 837. Alexander has not alleged facts sufficient to plausibly establish that any defendant was aware of those conditions and failed to take action to correct them. In short, he has not adequately alleged that any specific defendant was deliberately indifferent to those conditions This Eighth Amendment claim fails.

### 2. Food at Red Onion

Alexander also alleges that the food at Red Onion tastes terrible, "like shit and throw-up." In the context of providing food in prison, the Eighth Amendment imposes a duty on prison officials to provide inmates with "adequate food." *Farmer*, 511 U.S. at 832. This does not require that prisoners be given food that is "tasty or aesthetically pleasing," only that the food be "adequate to maintain health." *LeMarie v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993); *Washington v. McAuliffe*, No. 7:16-CV-00476, 2019 WL 1371859, at *7 (W.D. Va. Mar. 26, 2019) ("To the extent [plaintiff's] claim that the food is 'inedible' is based on its taste, texture, or temperature, he similarly has not stated a claim, under the Eighth Amendment"). The Fourth Circuit has explained that, even in the context of special diets based on medical restrictions, prison officials satisfy their Eighth Amendment obligations by simply providing some food that the prisoner is able to eat without compromising his health. *Scinto v. Stansberry*, 841 F.3d 219, 233 (4th Cir. 2016). Alexander has not alleged that he (or anyone else) got sick from eating the food, or that he has lost significant weight or been unable to maintain a healthy weight because of the food. *See Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2020) (reasoning that an Eighth Amendment claim based on inadequate food can be stated by allegations that the prisoner

8

lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet).

Moreover, as with his other living conditions claims, Alexander wholly fails to identify any particular defendant who aware that the food created a substantial risk of serious harm and failed to take "reasonable measures" to alleviate that danger. *Farmer,* 511 U.S. at 832. Accordingly, this claim fails, too.

### 3. Being shackled and in restraints; denial of recreation and showers; and frequent searches and "trashing" of Alexander's cell

Without any supporting detail, Alexander makes the general assertion that he is kept in "shackles and handcuffs" at least seventy percent of the time at Red Onion, an allegation that borders on the fanciful. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (holding that a court is not required to accept without question the truth of the plaintiff's factual allegations if those allegations are fanciful, but can instead determine those allegations to be frivolous for purposes of 28 U.S.C. § 1915(d)). He also asserts that his cell is searched and trashed "all the time," and that he is denied rec and showers, although he does not state the frequency with which these denials occur.

Even if all of these allegations are true, and assuming that his allegations would satisfy the objective element of a conditions claims, Alexander again does not point out any specific defendant or defendants who were responsible for those conditions, nor does he identify any defendant who was aware of these alleged conditions and failed to reasonably act to alleviate any risk from them. Accordingly, he also has failed to state an Eighth Amendment claim with regard to these issues. All of his conditions claims will therefore be dismissed without prejudice.

### C. Retaliation claims

Alexander's complaint repeatedly asserts—usually in conclusory fashion—that

everything negative that has happened to him was the result of retaliation, either because of his prior altercation with Maloney in April 2017 or because he is a "paper pusher" who stands up for his rights. Critically, though, and with only one exception, he offers insufficient factual matter to plausibly state a retaliation claim.

To succeed on a First Amendment § 1983 retaliation claim, Alexander must establish that (1) he engaged in protected First Amendment activity, (2) "the alleged retaliatory action adversely affected his protected speech," and (3) a but-for causal relationship existed between the protected activity and the retaliatory act. *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015).

Even assuming Alexander's allegations establish the first and second elements, Alexander's retaliation claims fail because he has not pled sufficient facts to plausibly allege the third. To establish the third element, a plaintiff must show that the protected activity was the but-for cause of the adverse action alleged. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015); *Gregg-El v. Doe*, 746 F. App'x 274, 275 & n.2 (4th Cir. Jan. 3, 2019) (citing to *Foster* in addressing the causation standard in the context of a prisoner's retaliation claim).

As to one of his claims, his claim that defendants Moore-Craft and Shirks brought retaliatory and false disciplinary charges against him simply because he threatened to sue them, I conclude that he has plausibly alleged a retaliation claim. Indeed, he alleges that Moore-Craft admitted that the reason behind the charges was because he had threatened to sue them. Moreover, at least one of those charges was subsequently dismissed.

As to the remaining general allegations of "retaliation," though, Alexander's complaint is devoid of any *facts* tying any of the actions taken against him to a retaliatory motive based on

10

his filing grievances or lawsuits. Rather, his allegations are conclusory, insufficient as a matter of law, and not entitled to be taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action, and a court need to treat legal conclusions as true when determining whether to dismiss a claim). In short, Alexander's allegations do not come close to plausibly alleging the "rigorous" but-for standard of causation. *See Raub*, 785 F.3d at 885 ("[O]ur causal requirement is rigorous." (internal quotations and citations omitted)). These conclusory allegations of retaliation without any supporting facts fail to state a claim. *See Adams*, 40 F.3d at 74 (summarily dismissing retaliation claim as insufficient because it consisted of merely conclusory allegations and no facts to show retaliatory motivation); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (noting that courts must treat an inmate's claim of retaliation by prison officials "with skepticism"). Accordingly, his retaliation claims—except for the one against Moore-Craft and Shirks—also must be dismissed.

### D. General claims of racial and religious discrimination

Alexander's claims of racial and religious discrimination also fail to state a federal claim. First of all, he primarily points to evidence of religious or racial slurs made by unidentified officers at Red Onion. While such comments by guards are inappropriate and abhorrent, they do not rise to the level of a constitutional violation. *See Henslee v. Lewis*, 153 F. App'x 179, 179 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983.").

More importantly, though, a prisoner's protection from racial discrimination (and religious discrimination, in some forms) is grounded in the Equal Protection Clause of the

11

Fourteenth Amendment.[7] To prove an equal protection claim, a litigant "must first demonstrate that he has been treated differently from others with whom he is similarly situated" and then "that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Two groups of persons are "similarly situated" only if they "are similar in all aspects relevant to" the challenged treatment. *See Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). Alexander makes general allegations and accusations of discrimination based on his race or religion, but does not identify how he was treated differently than any similarly situated person of another race or religion, nor does he allege any facts at all to show that any unequal treatment was the result of intentional discrimination. Moreover, he does not identify any particular defendant who he alleges denied him equal protection based on his race or religion. These claims therefore fail.

E. **Americans with Disabilities Act claim**

I also have considered Alexander's vague claim of discrimination in violation of the ADA, and I conclude that Alexander has failed to state a claim upon which relief can be granted and thus that this claim is subject to dismissal.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42

---

[7] Alexander does not identify any way in which his ability to practice his religious beliefs was impacted by any action by any defendant, and so I do not construe his complaint as attempting to assert a First Amendment claim based on interference with his religion. *See Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (explaining that to state a claim under the Free Exercise clause, "an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion."). A "substantial burden" on a person's religious exercise is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate h[is] beliefs[.]" *Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012).

U.S.C. § 12132. A state prison is a "public entity" within the meaning of the ADA, and, as such, Title II of the ADA is applicable to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also United States v. Georgia*, 546 U.S. 151, 154 (2006). To prevail on a claim under Title II of the Americans with Disabilities Act, Alexander must allege that: "(1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program or activity; and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability." *Spencer v. Early*, 278 F. App'x 254, 261 (4th Cir. 2008) (quotation omitted).

Alexander makes a blanket assertion of "discrimination" based on disability, but he does not offer any facts in support of his claim. Nor does he identify any specific program or activity from which he has been excluded, as necessary to state a claim under Title II of the ADA. To the extent he is relying on his allegations about a lack of medical treatment after the November 3, 2019 incident, or at some other time, it is well established that an inmate's medical treatment, or lack of treatment, does not provide a basis upon which to impose liability under the ADA. *See Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *see also Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004). Because his complaint fails to adequately allege facts to state an ADA claim, his ADA claim will be dismissed without prejudice.

### F. Claims Against Collins, Kiser, and Clarke

Alexander appears to assert claims against Kiser, Clarke, and Collins based on a supervisory liability theory. (Am. Compl., Claims 22, 24, 37, 48.) In order to succeed on a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive

> and unreasonable risk" of constitutional injury to citizens like the
> plaintiff; (2) that the supervisor's response to that knowledge was
> so inadequate as to show "deliberate indifference to or tacit
> authorization of the alleged offensive practices,"; and (3) that there
> was an "affirmative causal link" between the supervisor's inaction
> and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Id.* It appears that Alexander is attempting to rely on the April 15, 2017 incident, as well as other incidents he references, to establish that the conduct against him and, in particular, the conduct of officers slamming him on his face, was widespread. He also alleges that Collins, Clarke, and Kiser were personally aware of these incidents and that Clarke and Kiser even had Alexander moved away from Red Onion and to Wallens Ridge State Prison to protect him from such incidents and from retaliation, but they then allowed him to be moved back. He specifically alleges that these defendants were aware of all of these instances of use of force against him.

Although Alexander's allegations do not include a significant amount of factual detail, I conclude that they are sufficient, for purposes of screening under § 1915A(a), to allow the claims to go forward and to warrant further factual development. Thus, these claims will not be dismissed.

### III. PENDING MOTIONS

I turn next to three pending motions in the case. Specifically, there are currently two pending motions for preliminary injunction by Alexander, as well as a motion in which he objects to the magistrate judge's denial of his motion for appointment of counsel.

### A. First Motion for Preliminary Injunction (Dkt. No. 2)

In his first motion for preliminary injunction, he references the April 2017 incident (the one involving Maloney) and says that he was transferred to Wallens Ridge by Clarke and the Governor to prevent retaliation against him. He says they then changed their minds and brought him back to Red Onion, along with the entirety of his pod. Then, he references the November 3, 2019 assault repeatedly. What is missing from his preliminary injunction motion, however, is any facts or allegations that would show that he is in imminent danger of harm. And even though he states that he was "slammed on his face" four times over about a period of three years, at least one of those uses of force (the April 2017 one) has been judicially determined not to constitute excessive force.

Although defendants had not yet been served in the case, Warden Kiser was directed to respond to the first motion. In the response, Warden Kiser argues that the motion for preliminary injunction fails as a matter of law because Alexander fails to demonstrate any of the required elements for obtaining one. In particular, the response argues that Alexander cannot show he is likely to succeed on the merits of any underlying claim because the most specific facts provided in his preliminary injunction motion "are largely false and relate to two incidents about which he has already filed suit." The response further notes that Alexander fails to identify what irreparable harm he will suffer if a preliminary injunction does not issue. (Resp. to Mot. Prelim. Inj. 2–3, Dkt. No. 19.)

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of

15

preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. *Winter*, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

Based on the allegations and information in Alexander's first motion only, it is apparent that Alexander cannot satisfy the second *Winter* factor. To do so, Alexander must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a clear showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *See DiBiase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (explaining that a "possibility" of irreparable harm is insufficient to satisfy the movant's burden).

Not only does Alexander's motion fail to identify with any specificity what harm he will face in the absence of a preliminary injunction, he also fails to show that any harm that might occur in the absence of relief is "actual and imminent," rather than "remote [and] speculative." *See Direx Israel, Ltd.*, 952 F.2d at 812. It is not enough to offer vague assertions that he believes he will be attacked again, without noting who he thinks will attack him or why such harm is imminent. Instead, he simply says that "everyone is still retaliating against" him because of the April 2017 situation. He admits, however, that Maloney does not even work at Red Onion anymore. Because he has not alleged sufficient facts to show more than a possibility of irreparable harm, plaintiff's first motion for preliminary injunction (Dkt. No. 2) will be denied

without prejudice.

### B. Second Motion for Preliminary Injunction (Dkt. No. 25)

In his second motion for preliminary injunction, he claims that there has been another discrete incident of excessive force against him, when on April 20, 2020, Correctional Officer A. Mullins utilized excessive force against him and tried to snap his neck. He claims that if he is not sent to another prison, his life is at risk. I will direct the remaining defendants to respond to this motion within thirty days after entry of this order.

### C. Objections to Denial of Appointment of Counsel (Dkt. No. 24)

Lastly, Alexander has objected to the magistrate judge's denial of his motion for appointment of counsel. As explained in the order denying counsel (Dkt. No. 21), the court cannot require an attorney to represent an indigent civil plaintiff. *See Mallard v. U.S. D. Ct. for S.D. of Iowa*, 490 U.S. 296, 309 (1989). Instead, the court may only request that an attorney represent an indigent plaintiff when "exceptional circumstances" exist. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances depend on the type and complexity of the case and the ability of the plaintiff to present it. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard*, 490 U.S. at 309.

Alexander states that he has a low IQ and is "emotionally disturbed," that he does not feel capable of representing himself, and that he has a problem with his "tongue" that makes it difficult to speak. (Dkt. No. 24.) Although Alexander's amended complaint is not particularly organized in its presentation of claims, he clearly has shown an ability to express himself in his filings and to communicate with the court in writing. Indeed, the fact that many of his claims have survived an initial screening shows that he has the ability to adequately allege facts and claims. Moreover, the case remains in its early stages.

For all of these reasons, Alexander's circumstances are not exceptional so as to justify appointment of counsel at this time. Alexander's objections to the denial of his request for appointment of counsel (Dkt. No. 24) will be overruled and his request for counsel denied without prejudice. In the event that this case proceeds to trial, I will consider a renewed request for counsel at that time.

IV. CONCLUSION

In light of the above discussion, and the dismissal of the claims identified above, the following claims against the following individuals remain:

1. Eighth Amendment excessive force claims as a result of the November 3, 2019 incident against defendants Shirks, Moore-Craft, Correctional Officer Taylor, and Correctional Officer Mayes; against Captain Franklin for his ordering the use of ambulatory restraints; and related claims of bystander liability against defendants Lt. Messer and Sgt. Taylor (*e.g.*, Claims 2–7, 26; and Affidavit (Dkt. No. 16-1)), as well as state-law claims of assault and battery arising from the incident.

2. An Eighth Amendment claim based on a failure to provide medical care after the November 3, 2019 incident against defendants Moore-Craft, Nurse Craft, and Captain Franklin (*e.g.*, Claim 6).

3. A Fourteenth Amendment due process claim arising from the disciplinary proceedings against Alexander related to the November 3, 2019 incident, which is brought against Mullins; against Counts, who apparently addressed at least some of the appeals of his disciplinary convictions and who Alexander alleges has a conflict of interest because he sued her in previous lawsuits; and against Lt. Lyall, who Alexander alleges brought the charges, failed to ensure that they had a factual basis,

and possibly failed to properly ensure that the alleged contraband was maintained (*e.g.*, Claims 14–15, 19, 38).

4. A First Amendment retaliation charge against Moore-Craft and Shirks, based on their filing of allegedly false disciplinary charges against Alexander, in response to him threatening to sue them, and based on Moore-Craft's alleged statement to Alexander that they were bringing charges against him because he threatened to sue them (*e.g.*, Claim 1, Affidavit at 2).

5. A supervisory liability claim against Clarke, Kiser, and Collins, based on Alexander's allegations that they failed to protect him despite their personal knowledge of repeated incidents of him being slammed on his face and his contention that Clarke and Kiser acknowledged the danger he faced by initially transferred him to Wallens Ridge to protect him, but then allowed him to be transferred back to Red Onion, where the November 2019 incident occurred (*e.g.*, Claims 22, 24, 37, 48).

An appropriate order will be entered.

**ENTER**: This 29th day of June, 2020.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE