IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTONARI W. ALEXANDER, ) | |
| ) | Civil Action No. 7:19cv00784 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| K. MOORE-CRAFT, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |         United States District Judge |
| Defendants. ) | |

Antonari Alexander, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that defendant Nurse Craft failed to provide him with medical care.[1] Nurse Craft filed a motion for summary judgment, arguing that Alexander failed to fully exhaust available administrative remedies as to the claim against her. After reviewing the record, the court will grant Nurse Craft's motion for summary judgment.

I.

Alexander alleges that Nurse Craft refused to provide him with any medical care in violation of the Eighth Amendment after an incident where Red Onion State Prison correctional officers allegedly "slammed" him on his face and fell on top of him. Alexander claims that Nurse Craft saw him on November 3, 2019, but refused to provide him with treatment because she was married to one of the correctional officers involved in the use-of-force incident.

---

[1] Alexander also alleges claims against other defendants and those defendants have filed a motion for summary judgment that the court will address separately.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.");

*Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

## III.

### A.

Nurse Craft argues that Alexander failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). For the following reasons, the court will grant the motion for summary judgment.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of

-3-

the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

**B.**

In support of the Nurse Craft's motion for summary judgment, Grievance Coordinator Trapp provided an affidavit; Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and Alexander's grievance records related to the claim against Nurse Craft. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Grievance Coordinator Trapp explains that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the claim against Nurse Craft is grievable under OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an

informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If prison officials do not provide a response within 15 days of the informal complaint being logged, the inmate may proceed to filing a regular grievance and must attach the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the time period allowed to file a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day that they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days from the date it is received with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may

appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (including any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

## C.

Alexander alleges that Nurse Craft failed to provide him with medical treatment on November 3, 2019 and, therefore, his deadline to submit a regular grievance about it expired on December 3, 2019. Alexander did not file a valid and timely regular grievance concerning his claim against Nurse Craft.

On November 20, 2019, 13 days before the regular grievance deadline, Alexander prepared an informal complaint, claiming that he did not receive medical care following the November 3, 2019 use-of-force incident. The informal complaint was logged on November 25, 2019, eight days before the regular grievance deadline, and a response was provided to Alexander 11 days later, on December 6, 2019.

On November 21, 2019, Alexander prepared a regular grievance complaining that he did not receive medical care following the use-of-force incident. He also requested that he

receive informal complaints so that he could "get justice."[2] Alexander did not attach proof that he attempted to resolve this issue through the informal complaint process and, therefore, the regular grievance was rejected at intake. Alexander did not appeal the intake decision.

On November 24, 2019, nine days before the regular grievance deadline, Alexander prepared another informal complaint, asserting that he did not receive medical care following the use-of-force incident. The informal complaint was logged on November 26, 2019, seven days before the grievance deadline, and a response was provided to Alexander nine days later, on December 5, 2019.

On November 26, 2019, seven days before the regular grievance deadline, Alexander prepared a third informal complaint, complaining that he did not receive medical care after L. Collins's "flunk[ie]s used excessive force, against" him.[3] The informal complaint was logged on December 2, 2019, one day before the regular grievance deadline, and a response was provided to Alexander three days later on December 5, 2019.

On December 3, 2019, the regular grievance deadline expired without Alexander having filed a valid regular grievance.

On December 12, 2019, Alexander submitted a regular grievance complaining that he did not receive medical care following the November 3, 2019, incident. This regular grievance was rejected at intake because the filing period had expired. The intake decision was upheld on appeal.

---

[2] Although he requested informal complaints, he apparently had a means to access them because he had filed one the previous day.

[3] The court notes that Alexander listed the date of the incident as November 26, 2019.

On December 15, 2019, Alexander submitted another regular grievance complaining that he did not receive medical care following the use-of-force incident. This regular grievance was also rejected at intake because the filing period had expired. Officials upheld the intake decision on appeal.

On December 18, 2019, Alexander submitted a regular grievance complaining that he did not receive medical care for pain in his spine, ankles, neck, arms, chest, forehead, and chin. He did not list the date he was denied care or the date the pain started. He also did not attach informal complaints documenting his attempts to resolve the issue informally. This regular grievance was rejected at intake for failure to provide sufficient information; Alexander did not appeal the intake decision.

Alexander did not file anyother informal complaints, regular grievances, or appeals concerning his claim against Nurse Craft. It is clear from the record that Alexander did not fully exhaust administrative remedies as to his claim against Nurse Craft. Accordingly, the court will consider whether administrative remedies were "available" to Alexander.

In response to Nurse Craft's motion, Alexander alleges generally that prison officials intentionally frustrate inmates' attempts to pursue administrative remedies. Without specifying which of his claims he is referring to,[4] he also states that he attempted to exhaust his remedies "multiple times," but "'all' of the grievance ladies abuse the[i]r discretion and make-up fabricated reasons to delay and hinder [his] efforts." He argues that they "mak[e him] work

---

[4] In their motion for summary judgment, the other defendants to this action also argue that Alexander failed to exhaust available administrative remedies as to some of his claims against them. Alexander's response in opposition was filed as a joint response to all of the defendants' motions for summary judgment.

-8-

harder th[a]n [he] should," and that he "just wan[ts to] say [for]get it, [] rip it all up, and say [to] hell with it." Alexander claims that he requested grievances, but they were not given to him. He states that the grievance department is "he[a]rtless and unsympathetic in [inmates'] plight[s to] be treated as human beings."

In reply to Alexander's response, Nurse Craft provided a supplemental affidavit from Grievance Coordinator Trapp. According to Trapp, inmates are educated on OP 866.1 when they arrive at a VDOC facility and it is also included in the Offender Handbook given to all inmates. Informal complaints and regular grievance forms are placed throughout the prison in areas that are accessible to inmates. If, however, an inmate cannot access an informal complaint or regular grievance form for some reason, the inmate can submit an Offender Request form to the grievance department asking to receive the desired forms. If an inmate still cannot access the forms after submitting the Offender Request, he may file a grievance about his lack of access to the forms. In this case, Alexander submits no evidence, and the grievance department has no record, that he attempted to submit an Offender Request asking for regular grievance forms before the 30-day deadline or informal complaint forms prior to the "de facto" 15-day deadline. Accordingly, the court cannot find that Alexander was prevented from properly exhausting available administrative remedies "through no fault of his own." Finding no genuine dispute of material fact, the court concludes that Alexander failed to exhaust available administrative remedies as to his claim against Nurse Craft.

## IV.

For the reasons stated, the court will grant Nurse Craft's motion for summary judgment.

The Clerk shall send copies of this memorandum opinion and the accompanying order to the parties.

**ENTERED** this 29th day of March, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE