IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTONARI WILLIAM ALEXANDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MRS. K. MOORE, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 7:19-cv-00784 <br><br> **MEMORANDUM OPINION** <br><br> By:   Hon. Thomas T. Cullen <br>         United States District Judge |

Antonari W. Alexander ("Alexander" or "Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights during the course of, and in their subsequent responses to, an incident that occurred on November 3, 2019, when Alexander was placed in ambulatory restraints at Red Onion State Prison ("Red Onion"). The court initially screened Alexander's lengthy amended complaint pursuant to 28 U.S.C. § 1915A, and identified five cognizable sets of claims against the 14 original defendants ("Claim 1" through "Claim 5"). (Mem. Op. pg. 3, June 29, 2020 [ECF 27].) And the court previously granted summary judgment on Alexander's claims against Nurse Craft because Alexander failed to exhaust prison grievance procedures as to those claims.

The 13 remaining defendants, who are all Red Onion employees, are: Harold Clarke, Director of the Virginia Department of Corrections ("VDOC"); L. Collins, Unit Manager; Hearings Officer Counts; Captain Franklin; Warden J. Kiser; Lt. Lyall; Correctional Officer

("C/O") Mayes; Lt. Messer; C/O K. Moore;[1] Hearings Officer Mullins; C/O E. Shirks; Sgt. Taylor; and C/O Taylor (collectively "Defendants").[2] Defendants have filed a motion for summary judgment as to the claims alleged against them, and Alexander has responded. After reviewing the record, the court will grant Defendants' motion for summary judgment as to all claims.

### I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

On November 3, 2019, during a routine pat down, Shirks found contraband tucked in the waistband of Alexander's pants. As a result, Shirks told Alexander he would not be permitted to participate in recreation. Shirks gave Alexander additional directions which Alexander resisted, leading correctional officers to use force against him. The court summarized Alexander's allegations relating to this incident in its § 1915A screening report:

> (1) a November 3, 2019 incident in which [Alexander] alleges he was "slammed on his face" in his cell by Moore[] and Shirks and then later Correctional Officers Taylor and Mayes twisted his neck "like an owl," resulting in injuries and continuing pain; (2) his subsequent placement in ambulatory restraints ordered by Captain Franklin and his placement in a segregated housing unit ("SHU") cell (Cell C-301) that he contends was filthy and smelled;[3] (3) the denial of medical treatment for his injuries while he was in the SHU; (4) allegedly false disciplinary charges being brought against him arising from the events of November 3; and (5) a disciplinary hearing addressing those charges, in which he alleges that the hearing officer (Mullins) and appeals officer

---

[1] Plaintiff misidentified this defendant. The clerk will be directed to update the docket to reflect that defendant "Moore-Craft" should be "Moore."

[2] Alexander's amended complaint identifies most defendants by only their last names and job titles. Counsel for defendants indicates that they have determined the identities of each named defendant. Alexander has not disputed defendants' representations. The court therefore accepts counsel's representations as to the identities of the named defendants.

[3] [Alexander] refers to the cell as a "torture chamber" and described it as having feces, urine, sperm, blood, and bugs that have been there a very long time. He alleges that the "smell alone makes you sick" and that he got a headache as a result of being in the cell for two days. (Am. Compl., Claim 42, Affidavit at 2.)

> (Counts) were biased against him and that he was otherwise denied due process. (*See* Am. Compl., Claims 1–8, 11–15, 18–22, 30–37, 39–43, 47–48, 50–52, Dkt. No. 16)

(Mem. Op. pg. 3, June 29, 2020 [ECF No. 27] (footnote and citations in original).) This screening report determined that Alexander's factual allegations stated five separate claims:

> Claim 1 - Eighth Amendment excessive use of force against Cpt. Franklin, C/O Mayes, Lt. Messer, C/O Moore, C/O Shirks, C/O Taylor, and Sgt. Taylor.
>
> Claim 2 - Eighth Amendment failure to provide medical care against Cpt. Franklin and C/O Moore.
>
> Claim 3 – Fourteenth Amendment due process violation against Hearing Officer Counts, Lt. Lyall, and Hearing Officer Mullins.
>
> Claim 4 – First Amendment retaliation against C/O Moore and C/O Shirks.
>
> Claim 5 – Supervisory liability against VDOC Director Clarke, Unit Manager Collins, and Warden Kiser.

(ECF No. 27 & 28.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is more colorable or is not

significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III. DISCUSSION

A. Exhaustion of Administrative Remedies

Defendants argue that Alexander failed to exhaust his available administrative remedies with respect to Claims 1, 2, and 5 before filing this action, as required by 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 19, 211

(2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 171, 725 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

In support of their motion for summary judgment on Claims 1, 2, and 5, Defendants submit the affidavit of Human Rights Advocate (and grievance records custodian) Trapp; VDOC Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and Alexander's grievance records related to Claims 1, 2, and 5. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Trapp explains that the grievance process provides VDOC staff a

means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the substantive grounds for Claims 1, 2, and 5 are grievable under OP 866.1.

Generally speaking, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint prior to submitting a regular grievance. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint, staff must respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If prison officials do not provide a response within 15 days of the informal complaint being logged, the inmate may proceed to filing a regular grievance and must attach the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner so that staff can respond within the time period allowed to file a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day that they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and a receipt is issued to the inmate within two working days from the date it is received. If the grievance does not meet the criteria for acceptance, it is returned to the inmate within two working days from the date it is received with an explanation for why the grievance was rejected at intake. Intake rejections can be

appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The deadline for issuing a Level I response is 30 days from the filing of the grievance, and for a Level II or III response the deadline is 20 days. Expiration of the time limit (including any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal to the next level.

1. Claim 1

With respect to Claim 1—the incident involving an alleged excessive use of force occurred on November 3, 2019—Alexander's deadline to submit a regular grievance about the events of November 3 expired on December 3, 2019. During that time, Alexander filed six informal complaints and one regular grievance. Alexander filed another regular grievance on December 18, 2019. These grievances are included with Trapp's affidavit. For ease of reference, Alexander's grievances are identified here by the last four numeric digits of the log

numbers assigned to them. For example, the informal grievance designated "Log No. ROSP-19-INF-02218" will be referenced as "informal complaint -2218."

Three of Alexander's informal complaints related to the alleged use of excessive force on November 3: (1) informal complaint -2218 against Franklin, Messer, Moore, and Shirks, dated November 20, 2019; (2) informal complaint -2233 against Franklin and Shirks, dated November 24, 2019; and (3) informal complaint -2249 against Moore and Shirks, dated November 26, 2019. Staff responded to each of these informal complaints in a timely manner. There is no dispute that Alexander failed to pursue any of these informal complaints by filing a regular grievance.

Alexander also submitted a separate regular grievance on November 21, 2019, complaining that Mays and Correctional Officer Taylor had used excessive force against him. Messer rejected the regular grievance at intake because Alexander had not completed an informal complaint to attempt to resolve this issue. Alexander did not appeal the rejection to the Regional Ombudsman, and Messer's rejection of Alexander's regular grievance appears well-founded. In fact, the only informal complaint that Alexander commenced prior to submitting his regular grievance was informal complaint -2218, dated November 20. But informal complaint -2218 could not have served as antecedent for the November 21 regular grievance because it was lodged against different officers—Franklin, Messer, Moore, and Shirks, as opposed to Mays and C/O Taylor.

Staff responded to informal complaint -2218 on December 6, 2019, beyond the 30-day window Alexander had to initiate a regular grievance. According to the grievance policy, it was incumbent to Alexander to initiate his informal complaint with enough time to allow for

staff to respond before the expiration of his 30-day window to file a regular grievance. The timing issue is inconsequential, however, since informal complaint -2218 would not have served as a proper predicate for Alexander's regular grievance because he was complaining about different staff members.

Alexander did not timely and properly initiate a regular grievance regarding Claim 1, and therefore he did not exhaust his administrative remedies as to this claim against any of the relevant defendants—Franklin, Mayes, Messer, Moore, Shirks, C/O Taylor, or Sergeant Taylor. There is no indication or allegation that Alexander's failure to exhaust was the result of any action or inaction on the part of prison officials. For these reasons, the court will enter summary judgment as to Claim 1 in favor of Franklin, Mayes, Messer, Moore, Shirks, C/O Taylor, and Sergeant Taylor.

2. Claim 2

With respect to Claim 2—the alleged failure to provide medical care following the alleged events of November 3, 2019—Alexander's deadline to submit a regular grievance is somewhat less certain because Alexander may have required medical care in the days following November 3. Any extension of that window would nevertheless have been relatively short. If Alexander was injured on November 3, the need for medical care would likely have been apparent within a matter of days.

Within the relevant time frame, Alexander filed six informal complaints and two regular grievances. Three of Alexander's informal complaints related to an alleged failure to provide medical attention: (1) informal complaint -2218 against Franklin, Messer, Moore, and Shirks, dated November 20, 2019; (2) informal complaint -2234 against Franklin and Messer, dated

November 24, 2019; and (3) informal complaint -2252 against Collins, dated November 26, 2019. Staff responded to each of these informal complaints in a timely manner. Alexander did not follow up with a regular grievance on any of these informal complaints.

Alexander also submitted a separate regular grievance on November 21, 2019, complaining in a general manner that he "never received any medical attention," and that Nurse Craft denied and refused to give him adequate care.[4] As described above, Messer rejected that regular grievance at intake. The rejected regular grievance did not mention Franklin, Moore, or any of the other defendants named in Alexander's three relevant informal complaints. But the timing of the regular grievance is not material since informal complaint -2218 is not a proper predicate for Alexander's regular grievance. The informal complaint and the regular grievance pertain to different staff members.[5]

The record is clear that Alexander did not timely and properly initiate any regular grievance regarding Claim 2, and therefore he did not exhaust his administrative remedies as to this claim against Franklin or Moore. There is no indication or allegation that Alexander's failure to exhaust was the result of any action or inaction on the part of prison officials. For these reasons, the court will enter summary judgment on Claim 2 in favor of Franklin and Moore.

---

[4] Alexander's claims against Craft have been dismissed from this lawsuit.

[5] Alexander submitted another regular grievance on December 18, 2019, on an unrelated topic (alleged reprisals) that was rejected on grounds that Alexander had not completed the informal complaint process.

3. Claim 5

With respect to Claim 5—alleged supervisory liability on the part of Unit Manager Collins, Warden Kiser, and VDOC Director Clarke—Defendants likewise argue that Alexander failed to exhaust his available administrative remedies. Alexander's time frame for initiating a grievance relevant to this claim is rather ambiguous. But it is clear that Alexander would have had to complete the grievance process prior to bringing suit. *See Germain v. Shearin*, 653 Fed. Appx. 231, 234 (4th Cir. 2016) (prisoner must complete the grievance process before filing his lawsuit).

Trapp argues, and Alexander does not dispute, that Alexander did not file any relevant informal complaint or regular grievance against Warden Kiser or VDOC Director Clarke. As for Unit Manager Collins, Alexander submitted three informal complaints directed toward Collins: (1) informal complaint -2248 (alleging that Collins would condone bogus infractions or slam Alexander on his face for no reason at all); (2) informal complaint -2249 (alleging that Collins is against him); and (3) informal complaint -2251 (alleging that he told Collins he was in severe pain and never got medical attention). Staff responded to each of these informal complaints in a timely manner. Alexander did not follow up with a regular grievance on any of these informal complaints.

Alexander did not timely and properly initiate any regular grievance regarding Claim 5, and therefore he did not exhaust his administrative remedies as to this claim against any of the relevant defendants—Collins, Kiser, and Clarke. There is no indication or allegation that Alexander's failure to exhaust was the result of any action or inaction on the part of prison

officials. For these reasons, the court will enter summary judgment in favor of Collins, Kiser, and Clarke as to Claim 5.

B. Claim 3: Due Process Violation

Claim 3 is a Fourteenth Amendment due process claim against Defendants Counts, Lyall, and Mullins, based on alleged deficiencies in the disciplinary charges and attendant hearing arising from the November 3, 2019 incident. (*See* ECF No. 28.)

In support of their motion, Defendants submit Mullins's affidavit, in which Mullins describes the disciplinary process and includes documentation of Alexander's disciplinary hearing. It appears that Mullins conducted the disciplinary hearing.[6] Counts does not appear to have had any actual role in the disciplinary matter. Lyall had a very limited role in the disciplinary action; he reviewed and approved Shirks's disciplinary charges.

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty interest and (2) demonstrate

---

[6] There is some confusion in Defendants' submissions as to whether Mullins or Counts (who is also a Hearings Officer) conducted the disciplinary matter. Although Defendants' brief repeatedly refers to Counts as the Hearing Officer, Mullins's affidavit states that *he* was the Hearing Officer. The court construes this inconsistency as a clerical error in the brief, and proceeds based on the understanding that it was Mullins who conducted the disciplinary hearing.

deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

While prisoners retain rights under the Due Process Clause, they do not have a constitutionally protected interest in avoiding penalties for disciplinary infractions. *Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974). When the punishment at issue does not cause the original sentence to be enhanced, protected interests will generally be limited to freedom from restraint that imposes atypical and significant hardships on the inmate relative to ordinary prison life. *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Since "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," temporarily losing privileges as "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

Relevant to the incident of November 3, 2019, Shirks filed disciplinary charges against Alexander for possession of contraband and disobeying an order. Hearing Officer Mullins conducted a hearing on the disciplinary charges on November 18, 2019. Alexander was present and testified at the hearing, arguing that the items in his waistband were not contraband. Mullins nevertheless found Alexander guilty of the charges against him. As penalties, Mullins imposed a 30-day loss of personal electronics on the contraband charge, and a $15 fine on the charge of disobeying an order.

Collins, Manis, and Kiser each conducted various reviews of the disciplinary action, and found no error. The penalties imposed by Mullins—30-day loss of personal electronics and a $15 fine—are the sort of denials of privileges "which every prisoner can anticipate [and

-13-

which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991); *Johns v. Messer*, No. 7:19-cv-00207, 2020 WL 265232, at *4 (W.D. Va. Jan. 17, 2020) (neither a $15 fine nor a 60-day loss of electronic privileges is a penalty that "implicate[s] a due process violation or trigger[s] due process protections"); *Hewlett v. Goode*, No. 7:20-cv-00494, 2020 WL 6136849, at *2 n.2 (W.D. Va. Oct. 19, 2020) (collecting cases in which this court has acknowledged that small fines levied against a Virginia prisoner do not implicate the Due Process Clause).

But even if a protected liberty interest was implicated, Mullins's affidavit and the record of Alexander's disciplinary action conclusively establish that Alexander received due process in his disciplinary hearing. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply" *Wolff*, 418 U.S. at 556. To provide constitutionally sufficient procedural due process, a disciplinary proceeding must provide: (1) written notice of a claimed violation at least 24 hours before any disciplinary hearing; (2) the ability of the prisoner to call witnesses and present documentary evidence at the disciplinary hearing; and (3) a written statement of the evidence relied upon by the factfinder and the reasons for the disciplinary action taken. *See Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016) (citing *Wolff*, 418 U.S. at 563–66).

Alexander received both timely written notice of the violations and a written statement of evidence relied upon and reasons for the disciplinary action. His request to call Warden Kiser as a witness was denied on grounds Kiser's testimony would be irrelevant to the offense. Alexander asked to have testimony from another inmate, D. George, but although Mullins sent a form to George to be used to provide a witness statement, George did not return the form.

(Aff. of L. Mullins ¶ 24, Sept. 11, 2020 [ECF No. 49-2].) Mullins's affidavit thereby demonstrates that Alexander was given the constitutionally required due process protections. For these reasons, the court will enter summary judgment in favor of Counts, Lyall, and Mullins on Claim 3.

### C. Claim 4: First Amendment Retaliation

Claim 4 is a First Amendment retaliation claim against C/O Moore and C/O Shirks, who were both involved in the November 3, 2019 incident. Upon initial screening of Alexander's amended complaint, the court allowed Alexander's retaliation claims against Moore and Shirks based on their alleged retaliatory motive in bringing false and retaliatory disciplinary charges. As discussed above, only Shirks brought the disciplinary charges. But nothing in the record supports Alexander's bald allegation that Shirks acted from retaliatory motive, or that the disciplinary charges were false. For these reasons, the court will enter summary judgment in favor of Moore and Shirks on Claim 4.

## VI. CONCLUSION

For the reasons stated, the court will grant Defendants' motion for summary judgment.

The clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 30th day of September, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE